UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| CHARTER CENTRAL, LLC d/b/a | ) | |
| FIVE RIVERS AIR, LLC, and | ) | |
| FIVE RIVERS AVIATION, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.:   3:24-CV-423-TAV-JEM |
| | ) | |
| QBE INSURANCE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendant's motion to dismiss [Doc. 12]. Plaintiffs responded [Doc. 14], and defendant replied [Doc. 16]. Accordingly, this matter is ripe for review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons below, defendant's motion to dismiss [Doc. 12] will be **GRANTED in part** and **DENIED in part**. Counts One and Two will be **DISMISSED** and Count Three may proceed.

### I.      Background

This dispute arises from engine damage to plaintiffs' aircraft, which was underwritten by defendant's aircraft insurance policy (the "Policy") [*see* Doc. 11]. The parties agree that the Policy covered this property damage, but they dispute the sum of repair costs that defendant must pay [*see, e.g.*, Doc. 13, p. 2]. In its present procedural posture, this case primarily concerns the legal boundary between tort and contract duties at Tennessee common law [*see generally* Docs. 13, 14].

Plaintiffs Charter Central, LLC ("Charter Central") and Fire Rivers Aviation, LLC,

("Fire Rivers") are both Tennessee limited liability companies [Doc. 11 ¶¶ 1–2]. Defendant

QBE Insurance Corporation ("QBE") is a Delaware corporation, thereby conferring

diversity jurisdiction upon this Court given the alleged amount in controversy [*Id*. ¶¶ 3–4].

*See* 28 U.S.C. § 1332(a).

Fire Rivers owns a 2009 Hawker Beechcraft Corporation Hawker 4000, a twin-

engine turbofan jet (the "Aircraft") [*Id*. ¶ 6]. On December 31, 2022, Charter Central and

Fire Rivers entered jointly into the Policy, the operative period of which spanned December

31, 2022, through December 31, 2023 [*Id*. ¶ 7; Doc. 11-1, p. 7]. On November 12, 2022,[1]

the right engine of the aircraft stalled, forcing the pilot to deviate from the intended

flightpath [Doc. 11 ¶ 9].

The Court notes at this juncture that it appears the Policy that plaintiffs attach to

their First Amended Complaint [Doc. 11-1], which defendant cites as applicable [*see, e.g.*,

Doc. 13, p. 2 n.1], pertains to a policy period postdating the loss occurring on November

12, 2022 [*see* Doc. 11-1, p. 7]. The Policy covers "physical damage . . . that occurs *during*

*the policy period*," meaning that the 2022 coverage year, and not 2023, applies [*Id*. at 21].

QBE's Proof of Loss, also attached to the First Amended Complaint, confirms this

observation insofar as it states that the effective policy period for the loss date of November

11, 2022, is "December 31, 2021 to December 31, 2022" [Doc. 11-2, p. 3]. Although it

appears that plaintiffs maintained QBE insurance since 2014 [*see* Doc. 11-1, p. 7], the

---

[1] Plaintiffs allege that the engine damage occurred on or about November 12, 2022, but the Final Proof of Loss produced by defendant indicates a loss date of November 11, 2022 [*see* Doc. 11-2, p. 1].

2

Court cannot assume that the attached 2023 Policy is identical to the 2022 policy under which coverage arises. Nevertheless, the Court will proceed by referencing the attached Policy, though this discrepancy will ultimately affect its judgment for purposes of dismissal (*see infra* Section III(B)).

Upon notification of the November 2022 incident, QBE engaged Specialty Turbine Service, Inc. ("Specialty Turbine") to inspect the engine [Doc. 11 ¶¶ 10, 12]. Mid-Continent Aviation Services ("Mid-Continent"), a maintenance facility, and Pratt & Whitney, the engine manufacturer, also participated in the repair process [*Id*. ¶¶ 9, 21]. Ultimately, Specialty Turbine determined that $594,083.59 of the necessary engine repairs were covered by the Policy and the remaining $992,432.38 of repair costs would be borne by plaintiffs [*Id*. ¶ 18]. After negotiations with the engine manufacturer and QBE's voluntary adjustment, these figures were amended to provide $686,044.39 in Policy coverage and $359,704.58 in plaintiffs' non-covered repair costs [*Id*. ¶¶ 18, 23].

Of relevance to the instant pending motion, the Policy provides for physical damage coverage of plaintiffs' aircraft [*See* Doc. 11-1, p. 21]. Specifically, Section Three states: "[QBE] will promptly pay for any physical damage to a scheduled aircraft[2] that occurs during the policy period including its disappearance or theft, less any applicable deductible" [*Id*.]. The Policy Declarations provide coverage for up to $8,462,847 for each

---

[2] The term "scheduled aircraft" is separately defined as "any aircraft listed under Coverage 1 – Liability for Scheduled Aircraft and Coverage 19 – Physical Damage Coverage for Scheduled Aircraft in the Declarations or any aircraft covered under Coverage 28 – Automatic Insurance for Newly Acquired Aircraft" [Doc. 11-1, p. 26]. The Aircraft is listed under Coverage 1 in the Declarations [*see id*. at 7].

property damage occurrence [*Id.* at 8]. The Policy states that plaintiffs agree to several duties in the event of property damage, including: "promptly contact[ing] [QBE]," "authoriz[ing] [QBE] to obtain any records relating to a loss," "allow[ing] [QBE] the option to inspect any aircraft or insured property before any repairs begin or its disposal," "exhibit[ing] the damaged property and produc[ing] for [QBE's] examination all pertinent records and invoices, permitting copies to be made, at reasonable times and places as [QBE] designates," and "allow[ing] [QBE] to inspect aircraft records, repair and service invoices, sales receipts, and log books as may be required in the settlement of a claim" [*Id.* at 29–30]. If the parties fail to agree on the amount of coverage provided under the Policy:

> [N]o action will lie against the Company, nor will payment for loss be required, until thirty (30) days after the required proof of loss is filed with the Company and the amount of loss is determined as described in Section Three – Physical Damage Coverage of the Policy. Any action against the Company must be taken within one year after the date of the loss.

[*Id.* at 30].

Plaintiffs bring two claims of negligence (Counts One and Two) and one claim for breach of contract (Count Three) [*Id.* ¶¶ 24–41]. Specifically, they allege that defendant negligently authorized Mid-Continent and/or Pratt & Whitney to complete additional, unnecessary repairs to the aircraft totaling $117,843.70 [*Id.* ¶¶ 25, 28]. They further allege that defendant incurred an additional $118,064.80 in unnecessary repair costs by relying on Specialty Turbine's evaluation of engine parts [*Id.* ¶¶ 30, 33]. Finally, plaintiffs claim that defendant breached the Policy by refusing to pay the additional repair costs [*Id.* ¶ 37].

## II.    Legal Standard

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Specifically, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). However, the Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "'A legal conclusion couched as a factual allegation' need not be accepted as true

on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citations omitted).

Further, on a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008). Put differently, "[a] Rule 12(b)(6) movant 'has the burden to show that the plaintiff failed to state a claim for relief.'" *Willman v. Att'y Gen. of United States*, 972 F.3d 819, 822 (6th Cir. 2020) (quoting *Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015)). "The movant's burden . . . is a burden of explanation; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim." *Metro. Gov't of Nashville & Davidson Cnty. v. Fed. Emergency Mgmt. Agency*, No. 3:22-CV-540, 2024 WL 1337189, at *3 (M.D. Tenn. Mar. 28, 2024).

A court may consider exhibits attached to the complaint when ruling on a motion to dismiss. *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). However, if an exhibit contradicts the complaint, courts should disregard the allegations in the complaint in favor of the information in the exhibit. *Williams*, 498 F. App'x at 536.

### III.   Analysis

Although the Policy does not contain a choice of law provision, the parties agree that Tennessee law governs this dispute because the Policy was executed in Tennessee [*See*

6

Doc. 13, p. 4; Doc. 14, p. 1]. Defendant first moves to dismiss plaintiffs' negligence claims on grounds that it does not owe them a duty of care in tort [Doc. 13, p. 5]. Specifically, it argues that its duties arise from and are strictly limited to the Policy, citing Tennessee case law in support [*Id*. at 6–9]. Second, defendant moves to dismiss plaintiffs' breach of contract claim on grounds that it is time-barred by the Policy [*Id*. at 10]. Specifically, it contends that plaintiffs' cause of action accrued on February 10, 2023, yet they filed their complaint on October 22, 2024, which was beyond the one-year period prescribed in the Policy [*Id*. at 13–14].

In response, plaintiffs argue that defendant owed them a duty of care because it engaged third parties during the aircraft repair process, interactions that went beyond the scope of the Policy [Doc. 14, p. 3]. Because they allege negligence with respect to defendant's interactions with Mid-Continent, Pratt & Whitney, and/or Specialty Turbine, plaintiffs contend that their cause of action arises independently from the Policy [*Id*. at 4–7]. As for defendant's argument regarding the one-year limitations period, plaintiffs concede the accuracy of the dates cited, but they argue this period fails to account for "the five-month waiting period between the date of loss and the engine's tear down report," among other delays [*Id*. at 8].

In reply, defendant reiterates that contract law governs this dispute, including its engagement of third parties to investigate plaintiffs' claimed property damages [Doc. 16, p. 2]. Additionally, it emphasizes that Tennessee law focuses on the date a cause of action accrues when determining the applicable period of limitations—not the date on which proof of loss is submitted [*Id*. at 3–6]. Further, defendant argues that Tennessee courts

7

uphold similar provisions when the full extent of damages remains unknown [*Id.* at 7].

## A. Whether Defendant Owes Plaintiffs a Duty of Care in Tort

In Tennessee, "[t]o establish a claim for negligence, a plaintiff must demonstrate (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation." *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). The determination of whether a duty exists "is entirely a question of law for the court." *Id.* However, "when two parties enter into a contractual arrangement, their obligations to each other thereafter generally arise only out of the contract itself." *Harris v. Nationwide Mut. Fire Ins. Co.*, 367 F. Supp. 3d 768, 774 (M.D. Tenn. 2019) (citing *Thomas & Assoc., Inc. v. Metro. Gov't of Nashville*, No. M2001-00757-COA-R3-CV, 2003 WL 21302974, at *6 (Tenn. Ct. App. June 6, 2003)). As the United States District Court for the Middle District of Tennessee quoted from *Thomas*: "[I]f the only source of duty between a particular plaintiff and defendant is their contract with each other, then a breach of that duty, without more, ordinarily will not support a negligence action." *Id.* (quoting *Thomas*, 2003 WL 21302974, at *6).

Despite this general hesitation to recognize tort claims incidental to contracting relationships, courts have acknowledged the possibility of such claims in certain circumstances. This Court, for example, previously held that "a contract may create a state of affairs in which a general duty arises the breach of which may constitute actionable negligence," though noting again that "negligence will not lie where the only duty breached

8

is one created by contract." *Marquette Cement Mfg. Co. v. Louisville & N. R. Co.*, 281 F. Supp. 944, 947 (E.D. Tenn. 1967), *aff'd*, 406 F.2d 731 (6th Cir. 1969). "It is only where there is a breach of a general duty, even though it may arise out of a relationship created by contract, that breach of duty may constitute actionable negligence." *Id.* Put somewhat differently, "[c]onduct constituting breach of contract becomes tortious only when it also violates a duty, independent of the contract, arising from wider principles of social responsibility." *Thomas*, 2003 WL 21302974, at *6.

Because the Court has not been made aware of any Tennessee cases directly on point, "the Court must render a so-called '*Erie* guess' as to how the Tennessee Supreme Court would rule if confronted with th[is] issue." *Adams v. Vanderbilt Univ.*, No. 3:23-CV-1, 2024 WL 1182861, at *7 (M.D. Tenn. Mar. 19, 2024) (slip opinion).[3]

It appears to the Court that, based on the allegations contained in the First Amended Complaint, defendant's duties to plaintiffs arose from the Policy, not from "wider principles of social responsibility." *Thomas*, 2003 WL 21302974, at *6. QBE's duty to "promptly pay for any physical damage" to plaintiffs' aircraft arose from Section Three of the Policy [Doc. 11-1, p. 21]. Plaintiffs' duties to "promptly contact [QBE]" and allow QBE to "inspect any aircraft or insured property before any repairs begin . . . [and] aircraft records, repair and service invoices, sales receipts, and log books" similarly arose from the Policy [*Id*. at 29–30].[4] As defendant argued, therefore, "[t]hese alleged duties all relate to

---

[3] "Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Adams*, 2024 WL 1182861, at *7 (quoting *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)).

and arise out of QBE's insurance policy contractual obligation to cover damage to the engine" and "[a]bsent a contractual relationship between Plaintiffs and QBE, these parties never would have interacted" [Doc. 13, pp. 8–9].  While plaintiffs may be correct in stating that "the ability to engage a third-party expert and/or agent is not mentioned anywhere in the Policy" [Doc. 14, p. 5], insurance companies routinely rely upon third-party specialists to carry out their contractual obligations.  *See, e.g.*, *State Farm Fire & Cas. Co. v. Harper*, 596 F. Supp. 3d 1032, 1034 (M.D. Tenn. 2022) (noting as background that the insurer retained a third-party to conduct damage inspection pursuant to the parties' insurance policy).  And here, defendant argues that "engaging a third-party with specialized knowledge of jet engine systems and operation was necessary to investigate the damage consistent with its obligations in the Policy" [Doc. 16, p. 3].  So, because the duties at issue arose from the parties' contract, Tennessee law precludes plaintiffs' negligence claims.  *See Harris*, 367 F. Supp. 3d at 774.

Even assuming without deciding that some extra-contractual duties could have arisen beyond the four corners of the Policy, Tennessee law would still disfavor the imposition of tort liability in such circumstances.  Tennessee courts have addressed a distinct but conceptually related question: may an insured bring a tort claim against his insurer when the insurer assumed the insured's legal matters and ultimately incurred non-covered expenses?  *See Johnson v. Tennessee Farmers Mut. Ins. Co*., 205 S.W.3d 365,

---

[4] These "duties" of plaintiffs could also be characterized as conditions precedent to the imposition of defendant's aforementioned duty to pay given that coverage is predicated on plaintiffs' compliance [*See* Doc. 11-1, pp. 29–30].

370 (Tenn. 2006).  In response, the Tennessee Supreme Court held that where an insurer has "exclusive control over the investigation and settlement of a claim," the insurer "may be held liable to its insured for an amount in excess of its policy limits if as a result of bad faith it fails to effect a settlement within the policy limits."  *Id*. (quoting *State Auto. Ins. Co. of Columbus, Ohio v. Rowland*, 427 S.W.2d 30, 33 (1968)); *see also* Restatement of Liability Insurance § 24 ("When an insurer has the authority to settle a legal action brought against the insured, or the insurer's prior consent is required for any settlement by the insured to be payable by the insurer, and there is a potential for a judgment in excess of the applicable policy limit, the insurer has a duty to the insured to make reasonable settlement decisions.").  So, Tennessee courts have determined that an extra-contractual duty in tort arises only when an insured can show "a willingness on the part of the insurer to gamble with the insured's money in an attempt to save its own money or any intentional disregard of the financial interests of the plaintiff in the hope of escaping full liability imposed upon it by its policy."  *Johnson*, 205 S.W.3d at 370 (quoting *Goings v. Aetna Cas. & Sur. Co*., 491 S.W.2d 847, 849 (Tenn. Ct. App. 1972)).

As in the settlement over policy limits cases, this case presents an alleged conflict of interest between the insurer and insured with respect to the authorization of certain repairs because some of those repair costs would ultimately be borne by plaintiffs.  But unlike those cases in which an insurer has "exclusive control," *Johnson*, 205 S.W.3d at 370, or express contractual "authority to settle a legal action," Restatement of Liability Insurance § 24, neither party appears to allege here that QBE controlled the repairs of the Aircraft to the *exclusion* of plaintiffs [*see generally* Docs. 11, 13, 14, 16].  To the contrary,

11

plaintiffs merely allege that they "were never in contact with P&W or Mid-Continent regarding the repairs" [Doc. 11 ¶ 19].

Additionally, plaintiffs have not alleged bad faith. Rather, they appear to allege nonfeasance on the part of defendant for its failure to proactively advise third-party contractors of the aircraft's exemption from a set of otherwise required repairs pursuant to federal law [*Id.* ¶¶ 13–15]. This allegation, if proven true, could not rise to the level of "gambl[ing] with the insured's money in an attempt to save [QBE's] own money." *Johnson*, 205 S.W.3d at 370.

The Court reiterates that case law regarding bad faith settlement claims in the liability insurance context does not control this situation; but it further reflects Tennessee's delineation between tort and contract liability in the insurance setting. *See Adams*, 2024 WL 1182861, at *7 (quoting *Savedoff*, 524 F.3d at 762). And applying the above-cited principles, the Court is not persuaded that Tennessee law permits plaintiffs to bring their claims for negligence even if the Court were to find extra-contractual duties existed.

While plaintiffs' argument that the Policy's plain language omits third-party engagement holds some intuitive appeal, they fail to demonstrate how this argument overcomes Tennessee courts' general hesitation to allow similar tort claims. For example, the Court of Appeals of Tennessee held that even *intentional* torts, which axiomatically fall outside the express language of a contract, may "sound[ ] [only] in contract." *Oak Ridge Precision Indus., Inc. v. First Tennessee Bank Nat. Ass'n*, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992) (citing *Harvest Corp. v. Ernst & Whinney*, 610 S.W.2d 727, (Tenn. Ct. App. 1980) ("Insofar as a breach of contract action is concerned, it matters not whether the

12

breach was intentionally or unintentionally caused by negligence in attempting performance, the action remains in contract.").

At the dismissal stage the Court must "construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop*, 520 F.3d at 519. Even accepting as true the First Amended Complaint's allegations, plaintiffs are not entitled to relief under a theory of negligence due to the nature of their contractual relationship with defendant and Tennessee law's strong preference for confining such claims in contract liability.

Accordingly, defendant's motion to dismiss [Doc. 12] is hereby **GRANTED** with respect to Counts One and Two. These Counts are hereby **DISMISSED**.

## B. Whether Plaintiffs' Breach of Contract Claim is Time-Barred

Unlike the Court's ruling above as to the nature of tort liability incident to the Policy (*see supra* Section III(A)), the viability of Count Three is entirely dependent on the actual language contained in the Policy. And, as discussed before (*see supra* Section I), the Court cannot rely upon the language contained in the attached Policy considering the apparent discrepancy between this Policy's operative coverage period and the date on which the occurrence at issue is alleged to have occurred. The omission of the applicable policy as an attachment to the First Amended Complaint forecloses defendant's time-barred argument because, as defendant itself notes, "the statute of limitations for breach-of-contract actions in Tennessee is [generally] six (6) years," a period that does not appear to have otherwise expired between the date of loss and the date of plaintiffs' filing

13

suit [Doc. 13, p. 11 (citing Tenn. Code Ann. § 28-3-109(a)(3))].  So, in the absence of a comparable one-year limitation period in the 2022 policy period or allegations related thereto in the First Amended Complaint, the Court cannot conclude, based on the present record, that Count Three is time-barred.

Accordingly, defendant's motion to dismiss [Doc. 12] is hereby **DENIED** with respect to Count Three.

## IV.    Conclusion

For the reasons above, defendant's motion to dismiss [Doc. 12] is **GRANTED in part** and **DENIED in part**.  Plaintiffs' Counts One and Two are **DISMISSED** and Count Three may proceed.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

14